UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| BOWEI XI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 4:23-cv-00088-JD-PPS |
| | ) |
| THE TRUSTEES OF | ) |
| PURDUE UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**

Plaintiff, Dr. Bowei Xi ("Plaintiff"), by counsel and pursuant to Fed. R. Civ. P. 56 and Local Rule 56-1, respectfully submits her Response to Defendant's Statement of Material Facts

**I.    STATEMENT OF MATERIAL FACTS IN DISPUTE**

Local Rule 56-1 requires a party opposing a summary judgment motion to include in his/her response a "section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." Below are Defendant's "Statement of Material Facts" accompanied by Plaintiff's disputes as to each.[1]

1.    "The Area Committee also determined that the fact that Plaintiff had been recently awarded the Research Refresh Award was an indication that her research was not currently in an upward trajectory warranting promotion to Full Professor since the Research Refresh Award is typically awarded to faculty who have not been as active in research in recent years." [Filing No.

---

[1] In response to Defendant's Motion for Summary Judgment, Plaintiff focuses only on disputed facts that are "material" to Defendant's argument. Plaintiff reserves the right to dispute any and all facts, as represented by Defendant, at trial, including those facts not specifically disputed herein.

-1-

31 at ¶ 62 (*Defendant Trustees of Purdue University's Local Rule 56-1 Statement of Material Facts*[2])].

**Disputed/Misleading**: Plaintiff disputes this assertion to the extent it omits necessary context regarding Plaintiff's familial obligations being a motivating factor in her seeking the Research Refresh Award. Plaintiff applied for the award "due to caregiving responsibilities related to a high-risk pregnancy and the premature birth of [her] son, which occurred during the COVID-19 pandemic." [Filing No. 36-A at ¶ 6 (*Declaration of Bowei* Xi)]. Plaintiff had never been informed the "award could be interpreted negatively in the promotion process." [*Id* at ¶ 9]. In Plaintiff's Written Request for Reconsideration, she stated, "The Area Committee thus mistakenly determined that this Award signaled a stalling and a downward trajectory of my research." [Filing No. 32-1 at 184 (*Exhibit 1 – Plaintiff's Deposition Excerpts and Exhibits*)]. Plaintiff testified that the Research Refresh Award was improperly used against her, stating, "But the reason, as to the reason why I believe it's not truthful…The interim head then asked a colleague to pass a message to me, and this message is this: Next time I need to be careful about how I present the Research Refresh Award at the Area Committee meeting." [*Id* at 35, lines 7-14]. Plaintiff further testified regarding the unfair reliance on her receipt of the Research Refresh Award, testifying that Hao Zhang admitted to her that "by having this award, you admit you're falling behind even if you are not." [*Id* at 92, lines 10-11]. In an email to Peter Hollenbeck, Dennis Lin defended Plaintiff's receipt of the Research Refresh Award, stating, "An award is an award, it could be big or small, but should not be a negative. [Filing No. 36-G at 3 (*Dennis Lin Supplemental* Emails)]. Moreover, when asked if the Research Refresh disclosure to Area Committee mentioned Plaintiff's age, race, sex, or national origin, Plaintiff testified to her disclosure of her "two young children during the

---

[2] *Defendant Trustees of Purdue University's Local Rule 56-1 Statement of Material Facts* hereinafter titled "Deft. Statement of Material Facts."

-2-

pandemic." [*Id* at 24, lines 1-5]. Plaintiff also testified about her experience in the 2017 promotion cycle, stating, "After the Primary Committee meeting, Bil Cleveland told [her] there was a discussion about [her] being pregnant. Bill Cleveland said some people worried, if [she] were to be promoted, [she] would stop working because [she] will soon have a baby." [*Id* at 9, lines 20-24]. To the extent Defendant contends that the Area Committee's reliance on the Research Refresh Award as the basis for Plaintiff's denial to Full Professor was reasonable, it is a material dispute to be resolved at trial.

      2.      "Dr. Flesch explained the fact that Plaintiff only had one funding source at the time she applied, which was coming to an end in the near future, coupled with the fact that she had recently received the Research Refresh Award, created the impression that Plaintiff was not able to get competitive federal grant funding, which is important for promotion to Full Professor." [Filing No. 31 ¶ 74 (*Deft. Statement of Material Facts*)].

**Incomplete/Misleading:** Defendant's assertion that Plaintiff's funding was objectively coming to an end is misleading to the extent it omits important context provided by Plaintiff in her request for reconsideration. Plaintiff provided the following testimony regarding her funding source with the United States Army: "Q: And the date on that is May 15, 2020, through May 14, 2024. That's the one you're referencing; correct?"– "A: In my appeal, I provide additional document about Army Research Lab CRADA. The end date is October 2027." [Filing No. 32-1 at 27, lines 3-8 (*Plaintiff's Deposition Excerpts and Exhibits*)]. This is confirmed by Plaintiff's Multi Task Domestic Cooperative Research Agreement with the United States Army, which explicitly states, "The new expiration date shall be 6 October 2027." [Filing No. 36-B at 63 (*Bowei Xi EEOC Rebuttal and Exhibits*)].

      3.    "Dr. Cziczo never told Plaintiff that she should "give up" re-applying for promotion to full professor, nor did he tell Plaintiff not to re-apply. To the contrary, Dr Cziczo wanted Plaintiff ultimately to be promoted to full professor, so he was giving her advice to help her chances of success the next time she re-applied." [Filing No. 31 at ¶ 120 (*Deft. Statement of Material Facts*)].

      **Disputed:** Plaintiff testified regarding Dr. Cziczo in her deposition: "Q: Okay. So did he ever tell you specifically you could not reapply again in the future?"– "A: As I recall, that's his word, if he was in my situation, he would give up, or very similar to his original words." [Filing 32-1 at 75, lines 11-15 (*Plaintiff's Deposition Excerpts and Exhibits*)]. Furthermore, Plaintiff had never been "told of any rule or policy that would prevent [her] from reapplying," despite Hao Zhang's advice that she should not "reapply that year." [Filing No. 36-A at ¶¶ 10-11 (*Declaration of Bowei Xi*)]. To the extent Defendant disputes this fact, it is a genuine issue to be resolved at trial.

      4. Defendant asserts that Plaintiff does not have valid comparators for her claims of discrimination and that the individuals that Plaintiff has identified, Dr. Anindya Bhadra and Dr. Raghu Pasupathy, are not similarly situated to her. [See Filing No. 31 ¶¶ 86-98 (*Deft. Statement of Material Facts*)].

      **Disputed:** Plaintiff disputes these assertions by Defendant to the extent they serve to improperly suggest that differences in promotion cycle and professional specialization negate evidence of more favorable treatment. In fact, Defendant concedes that Dr. Bhadra is similarly situated to Plaintiff for the purposes of establishing a prima facie case. [Filing No. 30 at 5 n.1 (*Defendant Trustees of Purdue University's Brief in Support of Summary Judgment*)]. Plaintiff provided the following testimony: "Q: So your comparison to your promotion application to

Anindya Bhadra and Raghu Pasupathy, that's what you relied on to indicate you were discriminated against?" "A: Yes." [See Filing No. 32-1 at 38, lines 17-21 (*Plaintiff's Deposition Excerpts and Exhibits*)]. When asked how this comparison furthered her claims of discrimination, Plaintiff testified that her amount of funding, number of students, and number of publications exceeded those of Bhadra and Pasupathy. [*Id* at 44, lines 7-15]. When asked if she thinks Defendant treats those of Indian descent more favorably than other races or national origins, Plaintiff provided the following testimony: "My department's representatives to the Area Committee right now are both Indian male professors, Anindya Bhadra and Raghu. It's a feeling the college likes Indian over Chinese…No one say it aloud, but that's the general feeling." [*Id* at 61, lines 13-16, 24-25]. Notably, Defendant's own interrogatory response identified Dr. Bhadra and Dr. Pasupathy as among the three individuals promoted to Full Professor in the Department of Statistics. [Filing No. 36-C at ¶ 13 (*Defendant's Answers to Plaintiff's Initial Set of Interrogatories*)]. To the extent that Defendant disputes Bhadra and Pasupathy were, in fact, similarly situated to Plaintiff, it is a genuine dispute to be resolved at trial.

5. "Dr. Flesch also explained to Plaintiff that the Area Committee had concerns that Plaintiff did not have any competitive federal grant funding at the time she applied and that it was not clear based on her application whether the US Army Research Lab was awarded through a competitive process. Plaintiff confirmed during this meeting that the Army Research Lab was a contract for work and not a competitive grant." [Filing No. 31 ¶ 72 (*Deft. Statement of Material Facts*)].

**Incomplete/Misleading:** Defendant's assertion regarding the nature of Plaintiff's ARL funding is incomplete and thus disputed by Plaintiff, as it omits important context. Plaintiff testified in her deposition that the ARL funding was, in fact, highly competitive: "Q: At least the

information provided on this page, though, there's no indication that there was any sort of competitive process to receive this funding. Would you agree?" – "A: No…It's highly competitive. So Army Research Lab CRADA, as I talk to the Army researchers, is a highly prestigious document. It's a highly prestigious collaboration agreement with the university. It's highly competitive." [Filing No. 32-1 at 28, lines 7-19 (*Plaintiff's Deposition Excerpts and Exhibits*)].

6.  "Dr. Hollenbeck further noted that Plaintiff's comparison of her record to those of Dr. Bhadra and Dr. Pasupathy was not relevant to her appeal since promotion cases are not to be compared to other candidates, but rather individually held against the standards set by the College." [Filing No. 31 at ¶ 104 (*Deft. Statement of Material Facts*)].

**Disputed:** Plaintiff disputes this assertion to the extent it omits that the promotion process was not applied uniformly across candidates and that Plaintiff's comparators received more favorable and irregular treatment. Internal communications reveal that Dr. Bhadra explicitly sought to have his promotion process expedited by bypassing the usual Area Committee process, writing in a February 24, 2022 email, "I was hoping just as Dennis was able to convene a departmental Primary Committee meeting in a very short notice (and elicit a positive outcome), you'd be able to do something similar with the Area Committee and bypass the lengthy process, given the time-sensitive nature of my eventual decision." [Filing No. 36-E at 6 (*Bhadra Supplemental Emails*)]. Plaintiff testified to the broader perception within the department that professors of Indian descent, including Dr. Bhadra and Dr. Pasupathy, were treated more favorably in the promotion process, stating, "It's a feeling the college likes Indian over Chinese…No one say it aloud, but that's the general feeling." [*Id* at 61, lines 13-16, 24-25]. Moreover, Plaintiff has personal knowledge that Dr. Bhadra's total external funding, number of

publications, and number of supervised graduate students were lower than hers. [Filing No. 36-A at ¶ 14 (*Declaration of Bowei* Xi)]. The existence of such irregularities undermines Defendant's assertions and raises a genuine dispute to be resolved at trial.

## II.    ADDITIONAL MATERIAL FACTS

7.    Plaintiff, Bowei Xi, is a woman of East-Asian descent, was born in China, and has been continuously employed by Defendant, Purdue University, in the Department of Statistics since 2004. [Filing No. 1 ¶¶ 9-10 (*Complaint*)].

8.    Plaintiff was promoted to Associate Professor with tenure effective in August 2011, and she applied for promotion to Full Professor in 2018, 2020, and 2022. [Filing 32-1 at 6, lines 12-13; at 11, lines 19-20 (*Plaintiff's Deposition Excerpts and Exhibits*)].

9.    The promotion process at Purdue University involves confidential voting at each level of the process, to which individual votes and/or records are not disclosed. [Filing No. 31 ¶¶7-9 (*Deft. Statement of Material Facts*)].

10.    Plaintiff applied for and received a Research Refresh Award in 2022, which is awarded to faculty whose research progress has been impacted by personal or professional disruptions. [Filing No. 32-1 at 30, lines 4-6 (*Plaintiff's Deposition Excerpts and Exhibits*)].

11.    Plaintiff applied for Full Professor in October 2022. [Filing No. 1 ¶ 11 (*Complaint*)]. Plaintiff's October 2022 promotion package to Full Professor received unanimous support from the Department of Statistics Primary Committee. [*Id* at ¶ 12.]

12.    Plaintiff's promotion package was supported by numerous distinguished reviewers, many of whom described her as an "outstanding", "excellent and productive", and "uncommonly broad" researcher whose work had advanced multiple fields of research. [Filing

No. 36-G (*Plaintiff's Recommendation Letters*)]. Professor David Banks, the Director of SAMSI and Professor of Statistics at Duke University, wrote, "Professor Xi is an excellent and productive researcher, with strengths in both theory and practice." [*Id* at 3].

13. Professor J.J. Faraway, Professor of Statistics at the University of Bath and formerly the University of Michigan, stated, "Indeed, Purdue would be foolish not to grant this promotion as she could easily obtain this position at another strong research university." [*Id* at 15].

14. Plaintiff was not promoted to Full Professor following the College of Science Area Committee review in December 2022. [Filing No. 1 ¶ 13 (*Complaint*)]. The Area Committee cited Plaintiff's receipt of the Research Refresh Award as a significant reason against promoting Plaintiff. [*Id* at ¶ 19].

15. Prior recipients of Defendant's Research Refresh Award were publicly celebrated through announcements issued by the Office of the Provost, which recognized the award as a prestigious honor intended to advance faculty scholarship. [Filing No. 36-B at 21-29 (*Bowei Xi EEOC Rebuttal and Exhibits*)].

16. A similarly situated male Associate Professor, Dr. Anindya Bhadra, expressly sought to bypass the College of Science Area Committee, writing in an email, "I was hoping…you'd be able to do something similar with the Area Committee and bypass the lengthy process." [Filing No. 36-E at 6 (*Bhadra Supplemental Emails*)].

17. In the same communications, Dr. Bhadra also requested consideration for a University Faculty Scholar nomination to further enhance his promotion record, writing, "If this is something I can be considered for in the next academic year, say, that will be very helpful…the university-wide recognition that it comes with is very attractive for me." [*Id* at 3].

Plaintiff was not offered similar opportunities to coordinate and streamline her application, nor did she "receive any accommodations in the timing or structure of her promotion review." [Filing No. 36-A at ¶ 15 (*Declaration of Bowei Xi*)].

18. Dr. Bhadra was, in fact, promoted to Full Professor in 2022. [Filing No. 36-D at No. 12 (*Defendant's Answers to Plaintiff's Initial Set of Interrogatories*)].

19. Following the College of Sciences' denial of Plaintiff's 2022 promotion case, Dr. Dennis Lin, then Head of the Department of Statistics, resigned from his leadership role, stating that the failure to secure Plaintiff's promotion was "purely [his] fault," as he could not prevent the unfair evaluation of Plaintiff, further expressing, "this especially hurts when a similar (or even worse case) from another department went through." [Filing No. 36-G at 1 (*Dennis Lin Supplemental Emails*)].

20. Plaintiff submitted a written request for reconsideration of her 2022 promotion denial to the Vice Provost for Faculty Affairs on January 23, 2023. [Filing No.1 at ¶ 20 (*Complaint*)].

21. Plaintiff engaged in protected activity under Title VII when she submitted her request for reconsideration on January 23, 2023. [*Id* at ¶ 20].

22. Specifically, Plaintiff based her request for reconsideration "errors and/or misinterpretations of [her] publications and the status of [her] funding," in addition to the "grossly inadequate consideration of [her] professional competence compared to other faculty who were recently promoted." [Filing No. 36-B at 67 (*Bowei Xi EEOC Rebuttal and Exhibits*)].

23. Plaintiff was not allowed to reapply for promotion to Full Professor in the following promotion cycle, despite having never been told of any rule and/or policy that prohibited her reapplication. [Filing No. 36-A at ¶¶ 10-11 (*Declaration of Bowei Xi*)].

Dated: June 11, 2025                                    Respectfully Submitted,

                                                                 */s/ Timothy A. Dowers*
                                                                  John H. Haskin (7576-49)
                                                                  Timothy A. Dowers (37933-49)
                                                                  JOHN H. HASKIN & ASSOCIATES
                                                                  255 North Alabama Street, 2nd Floor
                                                                  Indianapolis, Indiana 46204
                                                                  Telephone (317) 955-9500
                                                                  Facsimile (317) 955-2570
                                                                  jhaskin@jhaskinlaw.com
                                                                  tdowers@jhaskinlaw.com

                                                                  *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing document was served on June 11 2025, via CM/ECF filing, to the following counsel of record:

| | |
|---|---|
| John R. Maley | john.maley@btlaw.com |
| Colleen E. Schade | colleen.schade@btlaw.com |
| Emily Lodge | Emily.Lodge@btlaw.com |

BARNES & THORNBURG LLP

                                                                  */s/ Timothy A. Dowers*
                                                                  Timothy A. Dowers
                                                                  JOHN H. HASKIN & ASSOCIATES, LLC