### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| BOWEI XI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 4:23-cv-00088-PPS-JEM |
| | ) |
| THE TRUSTEES OF PURDUE UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

### DEFENDANT TRUSTEES OF PURDUE UNIVERSITY'S LOCAL RULE 56-1 STATEMENT OF MATERIAL FACTS

Defendant The Trustees of Purdue University, by counsel, submits this Statement of Material Facts in support of its Motion for Summary Judgment.

**PURDUE UNIVERSITY AND ITS POLICIES AND PROCEDURES.**

1.     Purdue University is a public university with its principal campus located in West Lafayette, Indiana.  [Declaration of Lucy Flesch, Ex. 2, ¶ 4].[1]

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

2.     Purdue values diversity amongst the members of its community and is committed to equal employment opportunities for all of its employees, regardless of their race, sex, national origin, or any other protected characteristics.  [Ex. 2, ¶ 5]

**RESPONSE: Undisputed.**

---

[1] The cited exhibits are contained in Defendant's Appendix of Evidence in Support of its Brief in Support of its Motion for Summary Judgment. Initial references to evidence indicate the source and exhibit reference in the appendix (e.g. Excerpts from Deposition of  Plaintiff Bowei Xi, Ex. 1, p. 153:19-22). Thereafter, all references are to the exhibit number/letter and page/paragraph/line number (e.g., Ex. 2, ¶ ___, Ex. A, p. ___).

<u>REPLY</u>: No reply is necessary. Undisputed.

3.     Purdue maintains policies strictly prohibiting discrimination, harassment, and retaliation.  [Ex. 2, ¶ 5, Exs. A, B]

**<u>RESPONSE</u>: Undisputed.**

<u>REPLY</u>: No reply is necessary. Undisputed.

4.     Purdue's policies also establish informal and formal procedures that facilitate reporting and resolving of complaints of discrimination, harassment, or retaliation.  [Ex. 2, ¶ 6, Ex. C].

**<u>RESPONSE</u>: Undisputed.**

<u>REPLY</u>: No reply is necessary. Undisputed.

**PURDUE'S PROMOTION PROCESS.**

5.     There are three general ranks of faculty at Purdue: assistant professor (tenure-track); associate professor (tenured); and full professor (tenured).  [Ex. 2, ¶ 7].

**<u>RESPONSE</u>: Undisputed.**

<u>REPLY</u>: No reply is necessary. Undisputed.

6.     Each tenured faculty member has a home academic department, which is a unit within an academic college.  [Ex. 2, ¶ 7].

**<u>RESPONSE</u>: Undisputed.**

<u>REPLY</u>: No reply is necessary. Undisputed.

7.      Faculty who are seeking promotion to a higher rank must go through a multi-stage review by faculty and professional peers.  Voting at each stage is confidential, and there is no record kept of committee members' votes.  [Ex. 2, ¶ 10 ].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

8.      The first level of review occurs at the department level when a committee ("Primary Committee") reviews a candidate's promotion packet.  The Primary Committee is chaired by the department head and generally consists of all of the department's tenured faculty.  Each voting member of the Primary Committee (generally all members but the department head) votes "yes" or "no" as to each candidate, and the department head chooses whether to accept the recommendation of the Primary Committee.  [Ex. 2, ¶ 11].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

9.       Candidates who are successful at the department level are forwarded for further review by the college ("Area Committee").  The Area Committee is normally chaired by the college's dean and consists of each department head and tenured full professors who are elected by their colleges.  The Area Committee votes on each candidate, and the Dean then reviews the Area Committee's recommendations.  [Ex. 2, ¶ 12].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

10.     Candidates who are successful at the college level are forwarded for further review by a university-wide committee ("Campus Promotions Committee").  The Campus Promotions

Committee is chaired by the Provost and consists of deans, one tenured full professor from each college, and additional at-large tenured faculty who are elected by the University Senate's Nominating Committee. [Ex. 2, ¶ 13].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

11.     Faculty members who receive a favorable vote from the Campus Promotions Committee are forwarded to the Provost, who makes their recommendation to the President. Finally, the President makes their recommendation to the Board of Trustees for final action. [Ex. 2, ¶ 13].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

12.     A candidate who receives a negative promotion decision at any stage of the review process may submit a request for reconsideration to the Vice Provost for Faculty Affairs. Grounds for reconsideration are limited to evidence of grossly inadequate consideration of professional competence and evidence of judgments based on erroneous or misinterpreted information. The decision of the Vice Provost for Faculty Affairs is final. [Ex. 2, ¶ 14].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

13.     Evaluating a candidate for promotion is a nuanced and holistic process that involves evaluating numerous factors and considerations. [Ex. 2, ¶ 15].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

14.     Each year prior to the beginning of the faculty promotion cycle, the Office of the Provost sends a memorandum to faculty at the West Lafayette Campus with guidance on the University's procedures for promotion.  On April 29, 2022, the Office of the Provost sent its annual memo to all tenured and tenured-track faculty to provide an overview and guidance on the University's procedures prior to the 2022-2023 faculty promotion cycle.  [Declaration of Peter Hollenbeck, Ex. 3, ¶ 3, Ex. A].

**RESPONSE: Undisputed.**

<u>REPLY</u>: No reply is necessary. Undisputed.

15.     The Provost Memo states that when evaluating a candidate's excellence and scholarly productivity, "no single indicator should be used as the sole measure of excellence and/or scholarly activity, but rather multiple elements as described in the university and unit promotion criteria should be considered, as part of a holistic assessment."  [Ex. 3, ¶ 4, Ex. A, at DEF1 001443].

**RESPONSE: Undisputed.**

<u>REPLY</u>: No reply is necessary. Undisputed.

16.     Comparison of credentials between candidates is not appropriate nor part of the University's promotion policies.  Candidates who apply for promotion during the same cycle are not competing against one another for a position, and there is no cap on the number of faculty who can be promoted to a particular rank.  [Ex. 2, ¶ 15].

**RESPONSE: Undisputed.**

<u>REPLY</u>: No reply is necessary. Undisputed.

17.     The Primary Committee from an academic department may nominate a tenured faculty member for promotion, or a tenured faculty member who does not receive a nomination from

a member of the Primary Committee may nominate themselves for promotion if they have not been considered for promotion during the previous three years.  [Ex. 2, ¶ 18, Ex. E, pp. 1-2].

      **RESPONSE: Undisputed.**

      <u>REPLY</u>: No reply is necessary. Undisputed.


18.     In the Department of Statistics, the Primary Committee reviews promotion cases in the spring semester, and if it determines that a case is ready for promotion, the case will proceed forward with the application process.  Faculty members within the Department of Statistics are welcome to express interest in being considered for promotion at any time.  [Declaration of Xiao Wang, Ex. 4, ¶4].

      **RESPONSE: Undisputed.**

      <u>REPLY</u>: No reply is necessary. Undisputed.


19.     To be considered for promotion, candidates must meet minimum thresholds in the areas of discovery, learning, and engagement.  Additionally, candidates must demonstrate excellence and scholarly productivity in at least one of these three areas, although ordinarily, strength should be apparent in more than one area.  [Ex. 2, ¶ 19, Ex. D, p. 1].

      **RESPONSE: Undisputed.**

      <u>REPLY</u>: No reply is necessary. Undisputed.


20.     Purdue's Criteria for Tenure and Promotion for the West Lafayette Campus states that the varying nature of academic accomplishments even within disciplines should be taken into account when promotions are considered and acknowledges that discovery may take a variety of forms even within disciplines.  [Ex. 2, ¶ 16, Ex. D, p. 3].

      **RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

21.     Purdue's Criteria for Tenure and Promotion for the West Lafayette Campus states that journal impact scores may indicate quality or at least may be suggestive of the potential for a piece of scholarship to generate impact, but that they are far from the only or best indicator of impact. Accordingly, the policy states that caution should be taken when comparing impact scores and that they may be of comparative value only within sub-disciplines.  [Ex. 2, ¶ 17, Ex. D, p. 7].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

22.     Successful candidates seeking to demonstrate excellence in discovery must demonstrate a substantial record of published original research, including refereed publications, external funding (where it can be said to reflect the positive, rigorous assessment of peers and the scholarly promise of the topic), national and/or international reputation, awards, and other contributions to knowledge.  [Ex. 2, ¶ 20, Ex. D. p. 2].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

23.     Purdue's Criteria for Tenure and Promotion for the West Lafayette Campus instructs that the focus of review should be on the impact of the individual's discovery activities rather than the numbers of such activities.  Considerations for evaluating the impact of an individual's discovery activities include, amongst other things, the level of the individual's contributions, the prestige and importance of the activities, and the quality of work involved.  [Ex. 2, ¶ 20, Ex. D, p. 2].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

24.    Purdue's Criteria for Tenure and Promotion for the West Lafayette Campus also states that length of service in rank by itself should not ensure promotion or cause denial of promotion. [Ex. 2, ¶ 22, Ex. D, p. 2]. Plaintiff also admits that length of tenure alone is not a consideration for promotion. [Ex. 1, p. 153:19-22].

**RESPONSE: Undisputed.**

<u>REPLY</u>: No reply is necessary. Undisputed.


25.    Purdue University sets the baseline criteria for tenure and promotion. Colleges and academic departments may establish more-specific criteria, although any such criteria must be consistent with University guidelines. As such, faculty in different colleges and departments are subject to different promotional criteria depending on their respective departments and colleges. [Ex. 2, ¶¶ 9, 23].

**RESPONSE: Undisputed.**

<u>REPLY</u>: No reply is necessary. Undisputed.


26.    The College of Science and the Department of Statistics have established additional guidelines and instructions for promotion and tenure. [Ex. 2, ¶ 24, Ex. F, G].

**RESPONSE: Undisputed.**

<u>REPLY</u>: No reply is necessary. Undisputed.


27.    The College of Science requires that all external evaluation letters solicited in the previous year for a candidate's promotion be used again the following year if the candidate re-applies the following year. [Ex. 2, ¶ 24, Exs. F, G].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

28.    The Department of Statistics' Guidelines note that an associate professor should continually be awarded research grants from various prestigious institutions, such as the National Science Foundation, the National Institute of Health, the Department of Defense, and the Department of Energy.  [Ex. 2, ¶ 25, Ex. H].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

**PLAINTIFF'S EMPLOYMENT.**

29.    Plaintiff Bowei Xi is currently employed at Purdue University's West Lafayette Campus as an Associate Professor in Statistics.  [Ex. 1, pp. 23:17-23, 25:18-20].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

30.    Plaintiff was born in Beijing, China.  [Ex. 1, p. 19:16-19].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

31.    Plaintiff began working at Purdue in 2004 as an Assistant Professor of Statistics. [Ex. 1, pp. 22:21-23:1].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

32.    Plaintiff was promoted to Associate Professor of Statistics with tenure in 2011.  [Ex. 1, p. 23:11-23].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

33.    Plaintiff first applied for promotion to Associate Professor in 2009 and was denied. When she was denied in 2009, she did not believe her sex, race, national origin, or age played any role in that decision.  [Ex. 1, pp. 24:6-25:1].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

34.    The job duties for the role of Associate Professor and Full Professor are generally the same.  [Ex. 1, p. 25:10-17].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

35.    Plaintiff applied for promotion to Full Professor of Statistics in 2018 and was denied. [Ex. 1, p. 32:4-8].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

36.    Plaintiff applied for promotion to Full Professor of Statistics in 2020, but she subsequently withdrew her application from consideration after the Primary Committee vote.  [Ex. 1, pp. 34:17-25, 36:5-7].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

37.     Plaintiff has served on Primary Committees to review applicants applying for promotion from assistant professor to associate professor in the Department of Statistics. [Ex. 1, pp. 37:25-38:23].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

38.     Based on her experience serving on Primary Committees, Plaintiff acknowledges that there is no fixed number on the amount of journal papers or grants that is necessary to receive promotion. Rather, the focus is on the quality of the applicant's research. [Ex. 1, p. 40:7-14].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

39.     Plaintiff has never had any concerns that sex, race, or national origin has played a role in any of the promotion decisions she has been a part of as a member of the Primary Committee. [Ex. 1, pp. 40:15-21, 41:10-15].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

**PLAINTIFF APPLIES FOR AND RECEIVES THE RESEARCH REFRESH AWARD IN APRIL OF 2022.**

40.     The Research Refresh Award is a program previously offered by Purdue designed for faculty who could benefit from dedicated time to focus on and reinvigorate their research if their research was not in an upward trajectory. The program provided grant money and dedicated time away from teaching to focus on research. The award was typically awarded to faculty whose research

had not been active or had slowed down in recent years. The Research Refresh Award has since been discontinued and is no longer an active program at the University. [Ex. 2, ¶ 26].

> **RESPONSE: Undisputed.**
>
> REPLY: No reply is necessary. Undisputed.

41.    Plaintiff applied for the Research Refresh Award in April of 2022. [Ex. 1, p. 60:4-12].

> **RESPONSE: Undisputed.**
>
> REPLY: No reply is necessary. Undisputed.

42.    In Plaintiff's application for the Research Refresh Award, she states that her research progress slowed down and that the award would give her a "much-needed boost to help regain her momentum." [Ex. 1, pp. 62:1-6, 63:19-64:1, Dep. Ex. 13].

> **RESPONSE: Undisputed.**
>
> REPLY: No reply is necessary. Undisputed.

43.    Plaintiff was awarded the Research Refresh Award for the 2022-2023 academic year, the same year she was applying for promotion to full professor. [Ex. 1, pp. 66:20-67:7].

> **RESPONSE: Undisputed.**
>
> REPLY: No reply is necessary. Undisputed.

44.    In Plaintiff's Research Refresh acceptance letter, it states that Plaintiff is amongst a group of nominees that the selection committee believed could benefit from "intense focus to advance their scholarship and reinvigorate their careers." [Ex. 3, ¶ 12, Ex. F].

> **RESPONSE: Undisputed.**
>
> REPLY: No reply is necessary. Undisputed.

**PLAINTIFF APPLIES FOR FULL PROFESSOR OF STATISTICS IN 2022.**

45.    Plaintiff applied for promotion to Full Professor of Statistics in or around November 2022.  [Dep. Ex. 11]  In her application, Plaintiff contended that she excelled in the area of discovery (or research), and thus the Area Committee closely analyzed Plaintiff's record in this area.  [Ex. 2, ¶¶ 27, 28, Ex. I].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


46.    Plaintiff submitted an application document to apply for Full Professor of Statistics in 2022.  [Ex. 1, p. 42:8-17, Dep. Ex. 10].  The application consists of a document Plaintiff prepared and reference letters solicited from external reviewers.  [Ex. 1, pp. 42:15-43:2].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


47.    Plaintiff has no first-hand knowledge of what any of the review committees reviewed as part of their evaluation.  [Ex. 1, p. 44:6-8].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


48.    Plaintiff has no first-hand knowledge of what the Area Committee discussed when it evaluated her promotion case.  [Ex. 1, pp. 49:21-50:8].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

49.     Furthermore, when asked during her deposition whether she has any reason to believe that her race or national origin played a role in the Area Committee's decision-making process, Plaintiff testified, "I will not speculate on that."  [Ex. 1, p. 55:9-12].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

50.     Plaintiff's promotion application was first reviewed by the Primary Committee, which consisted of tenured faculty members within the Department of Statistics.  Plaintiff received a unanimous vote in favor of promotion by a vote of 12 (yes) to 0 (no).  [Ex. 2, ¶ 29, Ex. I].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

51.     Plaintiff's application was then reviewed by the Area Committee, which consisted of the College of Science's Dean, each department head within the College of Science, and tenured full professors from within the College of Science who were elected by the College of Science.  [Ex. 2, ¶ 30].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

52.     The Area Committee voted against promotion by a vote of 10 (yes) to 11 (no).  [Ex. 2, ¶ 30, Ex. I].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

53.    Lucy Flesch, then-Senior Associate Dean for the College of Science, attended the Area Committee meeting but did not participate in the discussion or vote.  [Ex. 2, ¶¶ 27, 30].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

54.    The Area Committee never discussed Dr. Xi's race, national origin, or sex (or any other characteristic) in its discussions regarding Dr. Xi's suitability or qualifications for promotion to full professor.  [Ex. 2, ¶ 31; Declaration of Patrick Wolfe, Ex. 5, ¶ 4].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

55.    The Area Committee had concerns about the impact of Plaintiff's discovery activity. The Area Committee noted it had concerns about the quality of Plaintiff's journals and conference proceedings in which she was publishing and had concerns that her research was not in an upward trajectory, evidenced by the Area Committee's conclusion that Plaintiff had no active federal grant funding at the time and had recently been awarded the Research Refresh Award.  [Ex. 2, ¶ 32, Ex. I].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

56.    The Area Committee that considered Plaintiff's promotion did not receive or review Plaintiff's Research Refresh Application.  Neither Plaintiff's sex nor the fact that Plaintiff claimed to have applied for the Research Refresh Award because she had kids was part of the Area Committee's assessment of Plaintiff's receipt of the Award.  [Ex. 2, ¶ 33; Ex. 5, ¶ 6].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

57.     At the time she applied for promotion to full professor in 2022, Plaintiff only had one funding source that was not expired – the Army Research Lab.  [Ex. 1, pp. 55:13-56:2].

**RESPONSE**: **Undisputed.**

REPLY: No reply is necessary. Undisputed.

58.     In Plaintiff's promotion application, she did not provide information indicating how the Army Research Lab funding was awarded, [Ex. 1, pp. 56:21-57:11], and the Area Committee ultimately determined this funding was not awarded through a competitive grant process.  Rather, the Area Committee considered this as work-for-hire funding, which the Area Committee determined was not evidence of active research and not as prestigious as funding awarded through a competitive grant process.  Furthermore, competitive federal grant funding is an important consideration for promotion to Full Professor.  [Ex. 2, ¶ 34].

**RESPONSE**: **Undisputed.**

REPLY: No reply is necessary. Undisputed.

59.     Moreover, the Area Committee considered the fact that the Army Research Lab Funding that was listed on Plaintiff's application was ending the following academic year in 2024, further illustrating that Plaintiff's research was not in an upward trajectory.  [Ex. 2, ¶ 34.; Ex. 1, pp. 55:17-56:12].

**RESPONSE**: **Undisputed.**

REPLY: No reply is necessary. Undisputed.

60.    Plaintiff later contends that her Army Research Funding was extended to 2027, but she admits that this was not disclosed on her promotion application, and her application indicates the funding was ending in 2024.  [Ex. 1, p. 56:6-12].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

61.    The Area Committee also could not determine whether Plaintiff was a key contributor in many of her publications.  [Ex. 2, ¶ 35].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

62.    The Area Committee also determined that the fact that Plaintiff had been recently awarded the Research Refresh Award was an indication that her research was not currently in an upward trajectory warranting promotion to Full Professor since the Research Refresh Award is typically awarded to faculty who have not been as active in research in recent years.  [Ex. 2, ¶ 36].

**RESPONSE: Disputed/Misleading: Plaintiff disputes this assertion to the extent it omits necessary context regarding Plaintiff's familial obligations being a motivating factor in her seeking the Research Refresh Award. Plaintiff applied for the award "due to caregiving responsibilities related to a high-risk pregnancy and the premature birth of [her] son, which occurred during the COVID- 19 pandemic." [Filing No. 36-A at ¶ 6 (*Declaration of Bowei* Xi)]. Plaintiff had never been informed the "award could be interpreted negatively in the promotion process." [*Id* at ¶ 9]. In Plaintiff's Written Request for Reconsideration, she stated, "The Area Committee thus mistakenly determined that this Award signaled a stalling and a downward trajectory of my**

research." [Filing No. 32-1 at 184 (*Exhibit 1 – Plaintiff's Deposition Excerpts and Exhibits*)]. Plaintiff testified that the Research Refresh Award was improperly used against her, stating, "But the reason, as to the reason why I believe it's not truthful…The interim head then asked a colleague to pass a message to me, and this message is this: Next time I need to be careful about how I present the Research Refresh Award at the Area Committee meeting." [*Id* at 35, lines 7-14]. Plaintiff further testified regarding the unfair reliance on her receipt of the Research Refresh Award, testifying that Hao Zhang admitted to her that "by having this award, you admit you're falling behind even if you are not." [*Id* at 92, lines 10-11]. In an email to Peter Hollenbeck, Dennis Lin defended Plaintiff's receipt of the Research Refresh Award, stating, "An award is an award, it could be big or small, but should not be a negative. [Filing No. 36-G at 3 (*Dennis Lin Supplemental* Emails)]. Moreover, when asked if the Research Refresh disclosure to Area Committee mentioned Plaintiff's age, race, sex, or national origin, Plaintiff testified to her disclosure of her "two young children during the pandemic." [*Id* at 24, lines 1-5]. Plaintiff also testified about her experience in the 2017 promotion cycle, stating, "After the Primary Committee meeting, Bil Cleveland told [her] there was a discussion about [her] being pregnant. Bill Cleveland said some people worried, if [she] were to be promoted, [she] would stop working because [she] will soon have a baby." [*Id* at 9, lines 20- 24]. To the extent Defendant contends that the Area Committee's reliance on the Research Refresh Award as the basis for Plaintiff's denial to Full Professor was reasonable, it is a material dispute to be resolved at trial.

REPLY: SOMF ¶ 62 remains undisputed. Plaintiff has presented no admissible evidence to support her narrative (i.e. argument) designed to persuade the Court to second-guess Purdue's

administrative- and academic-related decisions. And notably, Plaintiff does not dispute that "the Area Committee that considered Plaintiff's promotion did not receive or review Plaintiff's Research Refresh Application. Neither Plaintiff's sex nor the fact that Plaintiff claimed to have applied for the Research Refresh Award because she had kids was part of the Area Committee's assessment of Plaintiff's receipt of the Award." [SOMF ¶ 56]. Further, Plaintiff acknowledges that Bill Cleveland's alleged comment was in 2017.

63.    Plaintiff admits that there is no reference or discussion of Plaintiff having young kids as being the reason she applied for the Research Refresh Award in any of the documentation she received as feedback explaining the reason she was denied promotion. [Ex. 1, p. 141:24-142:4].

**RESPONSE**: **Undisputed.**

REPLY: No reply is necessary. Undisputed.

64.    In short, the Area Committee concluded that Plaintiff had not demonstrated excellence in her research, the area in which Plaintiff herself chose as an area in which she excelled, sufficient to support promotion to full professor. [Ex. 2, ¶ 37].

**RESPONSE**: **Undisputed.**

REPLY: No reply is necessary. Undisputed.

65.    The then-Dean of the College of Science, Patrick Wolfe, reviewed and approved the Area Committee's decision to deny promotion to Full Professor of Statistics, taking into account the vote count and the Area Committee's concerns about Dr. Xi's insufficient research, especially since Dr. Xi chose discovery (research) as the area in which she demonstrated excellence. [Ex. 5, ¶ 7].

**RESPONSE**: **Undisputed.**

REPLY: No reply is necessary. Undisputed.

66.    Patrick Wolfe participated in the Area Committee discussion but did not vote.  [Ex. 5, ¶ 3.].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


**PLAINTIFF MEETS WITH LUCY FLESCH AND HAO ZHANG FOR FEEDBACK ON HER CASE.**

67.    Plaintiff met with Lucy Flesch, the then-Senior Associate Dean of the College of Science, and Hao Zhang, Professor of Statistics, on or around January 18, 2023, so that Dr. Flesch and Dr. Zhang could give Plaintiff feedback on her promotion application and discuss the Area Committee's concerns regarding the same.  [Ex. 2, ¶ 38].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


68.    Plaintiff recorded this conversation, and Plaintiff produced a copy of the recording in discovery.  [Ex. 1, pp. 97:25-98:12].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


69.    During this meeting, Lucy Flesch shared that the Area Committee interpreted the fact that Plaintiff had recently been awarded the Research Refresh Award as an indication that her research had slowed down, and to be promoted to full professor, Plaintiff needs to demonstrate that her research momentum is already strong.  [Ex. 2, ¶ 38].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

70.    Dr. Flesch further explained that the purpose of the Research Refresh Award is to help faculty whose research has slowed down, for whatever reason, to regain momentum and put their research in an upward trajectory by allowing them dedicated time to focus on research.  [Ex. 2, ¶ 38].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

71.    Plaintiff acknowledged during her deposition that Hao Zhang explained to Plaintiff that the fact that someone applied for the Research Refresh Award may be interpreted as an admission that the individual has fallen behind in his or her research.  [Ex. 1, p. 102:17-25].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

72.    Dr. Flesch also explained to Plaintiff that the Area Committee had concerns that Plaintiff did not have any active competitive federal grant funding at the time she applied and that it was not clear based on her application whether her US Army Research Lab funding was awarded through a competitive process.  Plaintiff confirmed during this meeting that the Army Research Lab funding was a contract for work and not a competitive grant.  [Ex. 2, ¶ 39].

**RESPONSE: Incomplete/Misleading: Defendant's assertion regarding the nature of Plaintiff's ARL funding is incomplete and thus disputed by Plaintiff, as it omits important context. Plaintiff testified in her deposition that the ARL funding was, in fact, highly competitive: "Q: At least the information provided on this page, though, there's no indication that there was any sort of competitive process to receive this funding. Would you agree?" – "A: No…It's highly competitive. So Army Research Lab**

CRADA, as I talk to the Army researchers, is a highly prestigious document. It's a highly prestigious collaboration agreement with the university. It's highly competitive." **[Filing No. 32-1 at 28, lines 7-19 (*Plaintiff's Deposition Excerpts and Exhibits*)].**

REPLY: SOMF ¶ 72 remains undisputed.

73.    Dr. Flesch also told Plaintiff that it is generally expected that a candidate going from Associate Professor to Full Professor would have more active research funding from prestigious organizations, such as the National Science Foundation, which Plaintiff lacked.  [Ex. 2, ¶ 39.].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

74.    Dr. Flesch explained the fact that Plaintiff only had one funding source at the time she applied, which was coming to an end in the near future, coupled with the fact that she had recently received the Research Refresh Award, created the impression that Plaintiff was not able to get competitive federal grant funding, which is important for promotion to Full Professor.  [Ex. 2, ¶ 39.].

**RESPONSE: Incomplete/Misleading: Defendant's assertion that Plaintiff's funding was objectively coming to an end is misleading to the extent it omits important context provided by Plaintiff in her request for reconsideration. Plaintiff provided the following testimony regarding her funding source with the United States Army: "Q: And the date on that is May 15, 2020, through May 14, 2024. That's the one you're referencing; correct?"– "A: In my appeal, I provide additional document about Army Research Lab CRADA. The end date is October 2027." [Filing No. 32-1 at 27, lines 3-8 (*Plaintiff's Deposition Excerpts and Exhibits*)]. This is confirmed by Plaintiff's Multi Task**

**Domestic Cooperative Research Agreement with the United States Army, which explicitly states, "The new expiration date shall be 6 October 2027." [Filing No. 36-B at 63 (*Bowei Xi EEOC Rebuttal and Exhibits*)].**

<u>REPLY</u>: No reply is necessary. Plaintiff alleges that SOMF ¶ 74 is "Incomplete/Misleading" but does not dispute it.

75.     Dr. Flesch also explained that the Area Committee could not determine how competitive the conference proceedings in which Plaintiff participated were.  [Ex. 2, ¶ 40].

**<u>RESPONSE</u>: Undisputed.**

<u>REPLY</u>: No reply is necessary. Undisputed.

76.     Dr. Flesch also gave Plaintiff advice on how to strengthen her promotion application the next time she applied to enhance her likelihood of success.  For example, Dr. Flesch suggested that Plaintiff submit grant applications to appropriate federal agencies and that she should further highlight or explain her individual contributions to collaborative projects and papers because her level of contribution was not readily apparent from her application.  Accordingly, some faculty on the Area Committee, which includes faculty outside of Plaintiff's department, may not understand the potential significance of Plaintiff's contributions.  Dr. Flesch also told Plaintiff that the Department was open to re-nominating Plaintiff to apply for promotion to full professor again at any time but suggested that Plaintiff wait until 2024 to re-apply so that new external recommendation letters could be submitted. Some of the external letters that were solicited on Dr. Xi's behalf for her promotion application in 2022 portrayed a misguided interpretation of the Research Refresh Award.  For example, some of the letters referenced the fact that she was recently awarded the Research Refresh Award as a positive

without demonstrating an understanding of the purpose of the award. The Area Committee, however, did not view the Research Refresh Award as a positive indicator of Dr. Xi's research trajectory and therefore the College believed that if Dr. Xi used the same letters from her 2022 promotion case that contained misguided references to the Research Refresh Award, that would likely negatively impact her case at the Area Committee again. [Ex. 2, ¶¶ 41-42].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


**PLAINTIFF APPEALS THE DENIAL OF HER PROMOTION TO FULL PROFESSOR.**

77.    Plaintiff submitted a request for reconsideration for the denial of her promotion to full professor to Purdue's then-Vice Provost for Academic Affairs, Dr. Peter Hollenbeck, on January 25, 2023. [Ex. 1, p. 78:1-14; Ex. 3, ¶ 6].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


78.    The grounds for Plaintiff's appeal were (1) grossly inadequate consideration of professional competence, and (2) judgments based on erroneous or misinterpreted information. [Ex. 1, pp. 79:7-80:1, Dep. Ex. 18].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


79.    Plaintiff did not provide any additional information in her appeal that was not included in her initial promotion application in 2022. [Ex. 1, p. 82:5-8].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

80.     Nowhere in Plaintiff's appeal document does she state that she believed she was discriminated against on the basis of her race, sex, national origin, or any other characteristic.  [Ex. 1, pp. 94:24-95:2, 159:8-160:17, Dep. Ex. 18].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


81.     Dr. Hollenbeck did not interpret Plaintiff's appeal as encompassing any concerns of discrimination or unequal treatment based on Plaintiff's sex or any other characteristic.  [Ex. 3, ¶ 6].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


82.     Plaintiff disagreed with the Area Committee's assessment of the Research Refresh Award in her appeal, but admits she does not know what the Area Committee discussed in its meeting with regards to Plaintiff's application.  [Ex. 1, p. 83:4-14].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


83.     In her appeal, Plaintiff lists other faculty members who she claims received the Research Refresh Award and were subsequently promoted, but Plaintiff admits that none of these individuals were from the Department of Statistics or the College of Science.  Plaintiff further admits that none of these individuals applied at the same time Plaintiff applied in 2022, that she does not know who was on their respective promotion committees, and that she does not know whether or how these individuals' respective promotion committees considered the Research Refresh Award as part of their promotion evaluation.  [Ex. 1, pp. 83:15-84:18].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

84.    Since all of the individuals Plaintiff listed in her appeal are from different departments and different colleges, they would all have been subject to different promotion criteria than Plaintiff. [Ex. 2, ¶ 23].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

85.    Three individuals from the Department of Science received the Research Refresh Award from 2018-2022 – Dr. Donatella Danielle-Gaofalo, Dr. Henry Chang, and Plaintiff.  Dr. Chang has not gone through the promotion process to Full Professor since receiving the Research Refresh Award and Dr. Danielle-Gaofalo was already a Full Professor at the time she received the Research Refresh Award.  [Ex. 2, ¶ 44].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

86.    Plaintiff also claimed in her appeal that two male professors, Dr. Anindya Bhadra and Dr. Raghu Pasupathy, were promoted to Full Professor in Statistics and had worse credentials than her.  [Ex. 1, pp. 81:9-82:4, 87:19-89:9].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

87.    Dr. Bhadra and Dr. Pasupathy have different specializations in the field of statistics than Plaintiff.  Dr. Bhadra specializes in using Bayesian methods for high-dimensional and complex

data for applications to life sciences. Dr. Pasupathy specializes in stochastic optimization. Plaintiff specializes in using data with noise to generate robust models and results. [Ex. 2, ¶ 47].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

88.     Plaintiff admits that she was not present for any of the promotion committee's discussions regarding Dr. Bhadra's application. [Ex. 1, p. 90:13-16].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

89.     In her appeal, Plaintiff claims that since his Dr. Bhadra's promotion to Associate Professor, his amount of research funding, the number of students supervised, and the quality and quantity of publications are inferior to Plaintiff's. [Ex. 1, pp. 88:12-14, 89:25-91:10, Dep Ex. 18, at 0448].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

90.     Plaintiff admits that there is no specific number of students a professor is required to mentor in order to be promoted to Full Professor. [Ex 1, p. 89:19-25].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

91.     Plaintiff admits that there is no requirement that an individual's publications have a certain journal impact score in order to be promoted to Full Professor. [Ex. 1, pp. 91:11-92:21].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

92.     Plaintiff admits that length of tenure alone is not a consideration for promotion. [Ex. 1, p. 153:19-22].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

93.     In her appeal, Plaintiff also claims that she published in journals with lower acceptance rates than the journals in which Dr. Pasupathy published.  [Dep. Ex. 18, p. 0459].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

94.     Dr. Pasupathy applied for promotion to Full Professor of Statistics during the 2021-2022 academic year, a year before Plaintiff applied for Full Professor of Statistics during the 2022-2023 academic year.  [Ex. 1, p. 155:19-21; Ex. 2, ¶ 46].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

95.     Faculty in the College of Science are elected to the Area Committee to serve two-year terms every year, so only half of the Area Committee that considered Dr. Pasupathy's application in 2021 also considered Plaintiff's application in 2022.  [Ex. 2, ¶ 46].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

96.    Nonetheless, Dr. Pasupathy received a unanimous vote in favor of promotion from the Area Committee by a vote of 20 (yes) to 0 (no).  The Area Committee concluded that Dr. Pasupathy had a strong funding history, numerous publications in good journals, and positive letters. [Ex. 2, ¶ 48, Ex. K, p. 1].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


97.    Dr. Bhadra applied for promotion to Full Professor in 2022 and received a unanimous vote in favor of promotion from the Area Committee by a vote of 21 (yes) and 0 (no).  The Area Committee concluded that Dr. Bhadra had funding from NSF and NIH, a strong publication record in tier 1 journals, a good instruction record, was an editor at a top journal, and had been invited to multiple talks.  His promotion was supported by 12 letters from strong institutions (Columbia, Duke, Harvard).  [Ex. 2, ¶ 48, Ex. J, p. 1].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


98.    Prior to his promotion vote, Dr. Bhadra had recently received a competing offer for a Full Professor of Statistics position at North Carolina State University, a prestigious research institution, signifying that Dr. Bhadra was a well-respected and highly sought-after professor in the Statistics community.  [Ex. 2, ¶ 48].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


99.    Dr. Hollenbeck carefully reviewed Plaintiff's request for reconsideration.  As part of this evaluation, he spoke with the then-Associate Dean of the College of Science, Dr. Lucy Flesch,

and the then-interim Dean of the College of Science, Jean Chmielewski, for more information about the Area Committee's deliberations. Through these discussions, he determined that the Area Committee spent a considerable amount of time discussing Plaintiff's case and considered factors such as the impact of the journals in which Plaintiff was publishing, the competitiveness (or lack thereof) of her grant funding, her grant funding coming to an end in the near future triggering the necessity of the Research Refresh Award, and the lack of clarity on Plaintiff's role in some of her publications. [Ex. 3, ¶ 7, Ex. C].

> **RESPONSE: Undisputed.**

> REPLY: No reply is necessary. Undisputed.


100.    Dr. Dennis Lin, who presented Plaintiff's case to the Area Committee as the then-head of the Department of Statistics, sent Dr. Hollenbeck an email shortly after Plaintiff submitted her request for reconsideration. In his email, Dr. Lin provided Dr. Hollenbeck with some of the negative feedback he received from the Area Committee on Plaintiff's case, including that her grants were more "continuing grants" rather than "competitive grants," she had just received the Research Refresh Award, which is typically reserved for faculty who have not been active in research in recent years, and that she was not a key player in many of her publications. [Ex. 3, ¶ 8, Ex. D].

> **RESPONSE: Undisputed.**

> REPLY: No reply is necessary. Undisputed.


101.    On February 3, 2023, Dr. Hollenbeck, sent Plaintiff an email denying her appeal. [Ex. 1, p. 95:15-22; Ex. 3, ¶ 9, Ex. E].

> **RESPONSE: Undisputed.**

> REPLY: No reply is necessary. Undisputed.

102.    In his email, Dr. Hollenbeck explained that he did not find any evidence that the Area Committee failed to understand the Primary Committee's vote, Plaintiff's publication record, or Plaintiff's research awards. To the contrary, he found that the Area Committee discussed her case at length. [Ex. 3, ¶ 9, Ex. E].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

103.    Dr. Hollenbeck concluded that while he appreciates that Plaintiff may disagree with the Area Committee's conclusions, he did not believe that the Area Committee's conclusions derived from grossly inadequate consideration or erroneous or misinterpreted information. [Ex. 3, ¶ 9, Ex. E].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

104.    Dr. Hollenbeck further noted that Plaintiff's comparison of her record to those of Dr. Bhadra and Dr. Pasupathy was not relevant to her appeal since promotion cases are not to be compared to other candidates, but rather individually held against the standards set by the College. [Ex. 3, ¶ 9, Ex. E].

**RESPONSE: Disputed: Plaintiff disputes this assertion to the extent it omits that the promotion process was not applied uniformly across candidates and that Plaintiff's comparators received more favorable and irregular treatment. Internal communications reveal that Dr. Bhadra explicitly sought to have his promotion process expedited by bypassing the usual Area Committee process, writing in a**

February 24, 2022 email, "I was hoping just as Dennis was able to convene a departmental Primary Committee meeting in a very short notice (and elicit a positive outcome), you'd be able to do something similar with the Area Committee and bypass the lengthy process, given the time-sensitive nature of my eventual decision." [Filing No. 36-E at 6 (*Bhadra Supplemental Emails*)]. Plaintiff testified to the broader perception within the department that professors of Indian descent, including Dr. Bhadra and Dr. Pasupathy, were treated more favorably in the promotion process, stating, "It's a feeling the college likes Indian over Chinese…No one say it aloud, but that's the general feeling." [*Id* at 61, lines 13-16, 24-25]. Moreover, Plaintiff has personal knowledge that Dr. Bhadra's total external funding, number of publications, and number of supervised graduate students were lower than hers. [Filing No. 36-A at ¶ 14 (*Declaration of Bowei* Xi)]. The existence of such irregularities undermines Defendant's assertions and raises a genuine dispute to be resolved at trial.

REPLY: Defendant disputes that what Plaintiff refers to as "irregularities" raises a genuine dispute that must be resolved at trial. First, Plaintiff only speculates that Dr. Bhadra's request actually resulted in procedural irregularities. Speculation cannot create a genuine issue of fact that defeats summary judgment. *Circle City Broad. I, LLC v. AT&T Servs., Inc.,* 99 F.4th 378, 384 (7th Cir. 2024) (citing *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016)). Further, Plaintiff does not dispute that, like Plaintiff, Dr. Bhadra was required to provide letters of recommendation and his application was voted on by a twenty-one member Area Committee. SOMF ¶ 97. And lastly, if there was any immaterial procedural irregularity, it is clear from the email that it was due to "the time-sensitive nature of [Dr. Bhadra's] eventual decision" to stay

with Purdue or take a job offer as full professor at NC State. [Filing No. 39-2 at 6 (Bhadra Supplemental Emails)].

105.    Finally, Dr. Hollenbeck stated that he believed Plaintiff could have presented the nature, duration, and Plaintiff's exact role in her research awards more clearly and advised her to consult with her Department Head and Dean moving forward to create a strong case for promotion. [Ex. 3, ¶ 9, Ex. E].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

106.    Furthermore, Dr. Hollenbeck had no reason to believe that Plaintiff's sex, race, or national origin played any role in the Area Committee's decision to vote against promotion to full professor. [Ex. 3, ¶ 10].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

107.    Dr. Hollenbeck had no involvement in when Plaintiff can re-apply for promotion to full professor.  [Ex. 3, ¶ 11].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

108.    Plaintiff admits that she was aware that Purdue has specific channels to file complaints of discrimination related to Equal Opportunity, Equal Access, and Affirmative Action, yet she never filed a discrimination complaint with Purdue, despite claiming that she suspected discrimination may have played a role in her promotion decision.  [Ex. 1, pp. 93:10-94:15, 95:11-14].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


109.    Plaintiff admits that she never raised any concerns or complaints of discrimination with Purdue University prior to filing her Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) in this case.  [Ex. 1, p. 95:11-14].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


**PLAINTIFF MEETS WITH THE INTERIM HEAD OF THE DEPARTMENT OF STATISTICS, DANIEL CZICZO, ON OR AROUND APRIL 5, 2023.**

110.    Plaintiff met with the then-Interim Head of the Department of Statistics, Dr. Daniel Cziczo, on or around April 5, 2023, for her annual review, and Plaintiff recorded that conversation. [Ex. 1, p. 110:8-19; Ex. 6, ¶ 6].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


111.    During her annual review meeting, Plaintiff did not raise any concerns that her race, national origin, sex, or any other characteristic played any role in the decision to deny her full professor.  [Ex. 1, p. 113:12-18].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


112.    Daniel Cziczo was serving as the Interim Head of the Department of Statistics at the time, after the prior department head had stepped down.  Dr. Cziczo was not the Department Head

of Statistics at the time Plaintiff applied for promotion to full professor in 2022. [Ex. 1, pp. 111:10-112:4; Ex. 6, ¶¶ 2, 6]. Dr. Cziczo was from the Department of Earth, Atmospheric, and Planetary Sciences. [Ex. 1, pp. 111:21-112:6; Ex. 6, ¶ 2].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

113.    Prior to the annual review, Plaintiff sent Dr. Cziczo an email on March 8, 2023, inquiring when she would be able to re-apply for promotion to full professor. Dr. Cziczo responded on March 9, 2023, noting that it would be difficult to run her case again in 2023 because of the College of Science's policy regarding the life cycle of a letter of reference that prohibited the Department from replacing letters of reference solicited on Plaintiff's behalf the year before for 24 months. Accordingly, Dr. Cziczo told Plaintiff it would be difficult to run her case again in 2023 since the Department would have to use the same letters, but that he was open to discussing the same with her during her upcoming annual review. [Ex. 6, ¶ 4, Ex. A].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

114.    Dr. Cziczo also sent an email to Plaintiff's mentorship committee on March 9, 2023, which is a committee of faculty members designed to provide guidance and support to Plaintiff throughout the promotion process, stating that it was unlikely that the Department could run Plaintiff's case again in 2023 due to the life cycle of the external letters of reference, and the committee agreed with Dr. Cziczo's assessment. [Ex. 6, ¶ 5, Ex. B].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

115.     During the annual review meeting, Dr. Cziczo reiterated that if Plaintiff re-applied for promotion to full professor in 2023, she would have to use the same letters that she used in her unsuccessful promotion application in 2022 because of the College of Science's policy on the life-cycle of a letter.  [Ex. 6, ¶ 7].

**RESPONSE: Undisputed.**

<u>REPLY</u>: No reply is necessary. Undisputed.


116.     Plaintiff admits that if a candidate has poor letters one year and must use the same letters the following year, that could hurt the candidate's promotion chances.  [Ex. 1, pp. 171:11-172:10].

**RESPONSE: Undisputed.**

<u>REPLY</u>: No reply is necessary. Undisputed.


117.     Accordingly, Dr. Cziczo recommended that Plaintiff re-apply for promotion to full professor in 2024 so that the Department can solicit new letters seeking different information to help her promotion case.  [Ex. 6, ¶ 7].

**RESPONSE: Undisputed.**

<u>REPLY</u>: No reply is necessary. Undisputed.


118.     Some of the external letters that were solicited on Plaintiff's behalf for her promotion application in 2022 portrayed a misguided interpretation of the Research Refresh Award.  For example, some of the letters referenced the fact that she was recently awarded the Research Refresh Award as a positive without demonstrating an understanding of the purpose of the award.  The Area Committee, however, did not view the Research Refresh Award as a positive indicator of Dr. Xi's

research trajectory and therefore the College believed that if Dr. Xi used the same letters from her 2022 promotion case that contained misguided references to the Research Refresh Award, that would likely negatively impact her case at the Area Committee again.  [Ex. 2, ¶ 42].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


119.    Dr. Cziczo never told Plaintiff she was precluded from applying again in the future. [Ex. 1, p. 161:6-24; Ex. 6, ¶¶ 8-9].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


120.    Dr. Cziczo never told Plaintiff that she should "give up" re-applying for promotion to full professor, nor did he tell Plaintiff not to re-apply.  To the contrary, Dr. Cziczo wanted Plaintiff to ultimately be promoted to full professor, so he was giving her advice to help her chances of success the next time she re-applied.  [Ex. 6, ¶ 9].

**RESPONSE: Disputed: Plaintiff testified regarding Dr. Cziczo in her deposition: "Q: Okay. So did he ever tell you specifically you could not reapply again in the future?"– "A: As I recall, that's his word, if he was in my situation, he would give up, or very similar to his original words." [Filing 32-1 at 75, lines 11-15 (*Plaintiff's Deposition Excerpts and Exhibits*)]. Furthermore, Plaintiff had never been "told of any rule or policy that would prevent [her] from reapplying," despite Hao Zhang's advice that she should not "reapply that year." [Filing No. 36-A at ¶¶ 10-11 (*Declaration of Bowei Xi*)]. To the extent Defendant disputes this fact, it is a genuine issue to be resolved at trial.**

REPLY: No reply is necessary. Undisputed.

121.    Dr. Cziczo also never told Plaintiff that she was prohibited from submitting her case to the Statistics Primary Committee for consideration in 2023 if she chose to do so.  In fact, during their meeting, Plaintiff and Dr. Cziczo agreed that they would discuss her case at the next Statistics Primary Committee, occurring  in about a week, and ask their recommendation if she should re-apply in 2023 or 2024 and then follow the Primary Committee's recommendation. The Primary Committee's decision was for Plaintiff to wait to re-apply in 2024 so she could solicit new letters.  [Ex. 6, ¶ 7].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


122.    The fact that Plaintiff submitted a request for reconsideration of the denial of her promotion to the Vice Provost in January of 2023 played no role in Dr. Cziczo's recommendation that Plaintiff wait to re-apply until 2024, nor did it play any role or come up in any of Dr. Cziczo's discussions with the College of Science regarding Plaintiff's ability to re-apply for promotion in the future.  [Ex. 6, ¶ 10].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.


123.    Moreover, Plaintiff's race, national origin, sex, and/or any other characteristic did not play any role in Dr. Cziczo's recommendation that she wait to re-apply until 2024, nor did they play a role or come up in any of Dr. Cziczo's discussions with the College of Science regarding Plaintiff's ability to re-apply for promotion in the future.  [Ex. 6, ¶ 11].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

124.    Plaintiff admitted in her deposition that since Dr. Cziczo was serving as the interim Department Head of the Department of Statistics and came from a different department, he may not have been aware of the Department of Statistics' policies related to re-application for promotion. [Ex. 1, p. 165:15-21].

**RESPONSE**: **Undisputed.**

REPLY: No reply is necessary. Undisputed.

125.    Plaintiff claims that Dr. Cziczo told a colleague to pass a message along to Dr. Xi that she should be careful about how she presented the Research Refresh Award, but Plaintiff acknowledged that Dr. Cziczo did not explain what he meant by this comment, and she does not know what he meant either.  [Ex. 1, pp. 72:7-19, 112:8-113:8].

**RESPONSE**: **Undisputed.**

REPLY: No reply is necessary. Undisputed.

126.    Plaintiff admits that the alleged changes in promotion policies and procedures, which she alleges were changed to retaliate against her, were campus-wide changes that affected all faculty, not just her.  [Ex. 1, pp. 173:14-175:14].

**RESPONSE**: **Undisputed.**

REPLY: No reply is necessary. Undisputed.

127.    Plaintiff believes the fact that the prior Department Head for the Department of Statistics, Dennis Lin, stepped down as department head is what triggered a potential modification to the Area Committee composition announced in the 2023 Provost Memo.  [Ex. 1, pp. 175:19-176:16].

**RESPONSE**: **Undisputed.**

REPLY: No reply is necessary. Undisputed.

128.    Plaintiff further acknowledges that she does not know the relationship between the alleged changes in policy and Dr. Cziczo's alleged statement that she should not re-apply for promotion.  [Ex. 1, pp. 176:18-177:8].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

129.    Plaintiff asserted that when she first asked Dr. Cziczo about reapplying, he stated he had to check with the College first, but Plaintiff failed to explain how that is in any way connected to her appeal.  [Ex. 1, pp. 163:2-164:9].  When further pressed on any supposed relationship between Dr. Cziczo checking with the College of Science and her ability to re-apply, Plaintiff responded "I do not know.  I did not see their communications."  [Ex. 1, p. 177:3-8].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

130.    Plaintiff asked to be considered for promotion to full professor again in the spring of 2024.  [Ex. 1, p. 205:8-25; 207:23-208:17].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

**PLAINTIFF FILES A CHARGE OF DISCRIMINATION WITH THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION.**

131.    Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on April 14, 2023.  [Ex. 1, p. 117:4-16, Dep. Ex. 2].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

132.    In her EEOC Charge, Plaintiff alleges discrimination based on her race, age, sex, and national origin.  [Ex. 1, p. 121:7-20, Dep. Ex. 2].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

133.    Plaintiff does not allege retaliation in her EEOC Charge and did not check the box for retaliation on her EEOC Charge, despite admitting that she was aware of the facts supporting her retaliation claim at the time she filed her EEOC Charge.  [Ex. 1, pp. 121:11-25, 177:9-178:16, Dep. Ex. 2].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

**PLAINTIFF FILES THIS INSTANT LAWSUIT.**

134.    Plaintiff filed this instant lawsuit on October 19, 2023.  [Dkt. 1].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

135.    Plaintiff alleges five counts against Purdue.  Count I: age discrimination under the Age Discrimination in Employment Act; Count II: sex discrimination under Title VII of the Civil Rights Act of 1964; Count III: race discrimination under Title VII of the Civil Rights Act of 1964; Count IV: National Origin Discrimination under Title VII of the Civil Rights Act of 1964; Count V: Retaliation under Title VII of the Civil Rights Act of 1964; and Count VI: race discrimination under 42 U.S.C. § 1981.  [*See Generally*, Dkt. 1].  Plaintiff subsequently voluntarily dismissed Count I: age discrimination

under the Age Discrimination in Employment Act and Count VI: race discrimination under 42 U.S.C. § 1981. [Dkt. 28]. Accordingly, the remaining claims are Counts II (sex discrimination), III (race discrimination), IV (national origin discrimination), and V (retaliation).

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

136.    In her deposition, Plaintiff claimed that her appeal to the Vice Provost for Faculty Affairs to reconsider her denial of promotion constitutes the protected activity which she relies upon for her retaliation claim. [Ex. 1, pp. 159:2-23, 160:18-161:2].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

137.    Plaintiff remains employed by Purdue as an Associate Professor of Statistics with Tenure and is able to request that the Department of Statistics Primary Committee review her candidacy for promotion each year. [Ex. 2, ¶ 49; Ex. 4, ¶ 5].

**RESPONSE: Undisputed.**

REPLY: No reply is necessary. Undisputed.

**RESPONSES TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

138.    Plaintiff, Bowei Xi, is a woman of East-Asian descent, was born in China, and has been continuously employed by Defendant, Purdue University, in the Department of Statistics since 2004. [Filing No. 1 ¶¶ 9-10 (*Complaint*)].

RESPONSE: Plaintiff's narrative is not material to her claims or to Defendants' summary judgment motion.

139.    Plaintiff was promoted to Associate Professor with tenure effective in August 2011, and she applied for promotion to Full Professor in 2018, 2020, and 2022. [Filing 32-1 at 6, lines 12-13; at 11, lines 19-20 (*Plaintiff's Deposition Excerpts and Exhibits*)].

RESPONSE: Undisputed.


140.    The promotion process at Purdue University involves confidential voting at each level of the process, to which individual votes and/or records are not disclosed. [Filing No. 31 ¶¶7-9 (*Deft. Statement of Material Facts*)].

RESPONSE: Plaintiff's narrative is not material to her claims or to Defendants' summary judgment motion.


141.    Plaintiff applied for and received a Research Refresh Award in 2022, which is awarded to faculty whose research progress has been impacted by personal or professional disruptions. [Filing No. 32-1 at 30, lines 4-6 (*Plaintiff's Deposition Excerpts and Exhibits*)].

RESPONSE: Plaintiff's narrative is not material to her claims or to Defendants' summary judgment motion. In addition, it is not supported by admissible evidence (including personal knowledge) as required by Fed. R. Civ. P. 56. Plaintiff's argument and conjecture should be ignored.


142.    Plaintiff applied for Full Professor in October 2022. [Filing No. 1 ¶ 11 (*Complaint*)]. Plaintiff's October 2022 promotion package to Full Professor received unanimous support from the Department of Statistics Primary Committee. [*Id* at ¶ 12.]

RESPONSE: Plaintiff's narrative is not material to her claims or to Defendants' summary

judgment motion.

143.    Plaintiff's promotion package was supported by numerous distinguished reviewers,

many of whom described her as an "outstanding", "excellent and productive", and "uncommonly

broad" researcher whose work had advanced multiple fields of research. [Filing No. 36-G (*Plaintiff's*

*Recommendation Letters*)]. Professor David Banks, the Director of SAMSI and Professor of Statistics at

Duke University, wrote, "Professor Xi is an excellent and productive researcher, with strengths in

both theory and practice." [*Id* at 3].

RESPONSE: Plaintiff's narrative is not material to her claims or to Defendants' summary

judgment motion. In addition, it is not supported by admissible evidence (including personal

knowledge) as required by Fed. R. Civ. P. 56. Plaintiff's argument and conjecture should be

ignored.

144.    Professor J.J. Faraway, Professor of Statistics at the University of Bath and formerly

the University of Michigan, stated, "Indeed, Purdue would be foolish not to grant this promotion as

she could easily obtain this position at another strong research university." [*Id* at 15].

RESPONSE: Plaintiff's narrative is not material to her claims or to Defendants' summary

judgment motion.

145.    Plaintiff was not promoted to Full Professor following the College of Science Area

Committee review in December 2022. [Filing No. 1 ¶ 13 (*Complaint*)]. The Area Committee cited

Plaintiff's receipt of the Research Refresh Award as a significant reason against promoting Plaintiff. [*Id* at ¶ 19].

> RESPONSE: Plaintiff's narrative is not material to her claims or to Defendants' summary judgment motion. In addition, it is not supported by admissible evidence (including personal knowledge) as required by Fed. R. Civ. P. 56. Plaintiff's argument and conjecture should be ignored.

146. Prior recipients of Defendant's Research Refresh Award were publicly celebrated through announcements issued by the Office of the Provost, which recognized the award as a prestigious honor intended to advance faculty scholarship. [Filing No. 36-B at 21-29 (*Bowei Xi EEOC Rebuttal and Exhibits*)].

> RESPONSE: Plaintiff's narrative is not material to her claims or to Defendants' summary judgment motion. In addition, it is not supported by admissible evidence (including personal knowledge) as required by Fed. R. Civ. P. 56. Plaintiff's argument and conjecture should be ignored.

147. A similarly situated male Associate Professor, Dr. Anindya Bhadra, expressly sought to bypass the College of Science Area Committee, writing in an email, "I was hoping…you'd be able to do something similar with the Area Committee and bypass the lengthy process." [Filing No. 36-E at 6 (*Bhadra Supplemental Emails*)].

> RESPONSE: Plaintiff's narrative is not material to her claims or to Defendants' summary judgment motion. In addition, it is not supported by admissible evidence (including personal

knowledge) as required by Fed. R. Civ. P. 56. Plaintiff's argument and conjecture should be ignored.

148.    In the same communications, Dr. Bhadra also requested consideration for a University Faculty Scholar nomination to further enhance his promotion record, writing, "If this is something I can be considered for in the next academic year, say, that will be very helpful…the university-wide recognition that it comes with is very attractive for me." [*Id* at 3].  Plaintiff was not offered similar opportunities to coordinate and streamline her application, nor did she "receive any accommodations in the timing or structure of her promotion review." [Filing No. 36-A at ¶ 15 (*Declaration of Bowei Xi*)]. Dr. Bhadra was, in fact, promoted to Full Professor in 2022. [Filing No. 36-D at No. 12 (*Defendant's Answers to Plaintiff's Initial Set of Interrogatories*)].

RESPONSE: Plaintiff's narrative is not material to her claims or to Defendants' summary judgment motion. In addition, it is not supported by admissible evidence (including personal knowledge) as required by Fed. R. Civ. P. 56. Plaintiff's argument and conjecture should be ignored.

149.    Following the College of Sciences' denial of Plaintiff's 2022 promotion case, Dr. Dennis Lin, then Head of the Department of Statistics, resigned from his leadership role, stating that the failure to secure Plaintiff's promotion was "purely [his] fault," as he could not prevent the unfair evaluation of Plaintiff, further expressing, "this especially hurts when a similar (or even worse case) from another department went through." [Filing No. 36-G at 1 (*Dennis Lin Supplemental Emails*)].

RESPONSE: Plaintiff's narrative is not material to her claims or to Defendants' summary judgment motion. In addition, it is not supported by admissible evidence (including personal

knowledge) as required by Fed. R. Civ. P. 56. Plaintiff's argument and conjecture should be ignored.

150.    Plaintiff submitted a written request for reconsideration of her 2022 promotion denial to the Vice Provost for Faculty Affairs on January 23, 2023. [Filing No.1 at ¶ 20 (*Complaint*)].

RESPONSE: Plaintiff's narrative is not material to her claims or to Defendants' summary judgment motion. In addition, it is not supported by admissible evidence (including personal knowledge) as required by Fed. R. Civ. P. 56. Plaintiff's argument and conjecture should be ignored.

151.    Plaintiff engaged in protected activity under Title VII when she submitted her request for reconsideration on January 23, 2023. [*Id* at ¶ 20].

RESPONSE: Plaintiff's narrative is not a fact but a legal conclusion and should therefore be ignored.

152.    Specifically, Plaintiff based her request for reconsideration "errors and/or misinterpretations of [her] publications and the status of [her] funding," in addition to the "grossly inadequate consideration of [her] professional competence compared to other faculty who were recently promoted." [Filing No. 36-B at 67 (*Bowei Xi EEOC Rebuttal and Exhibits*)].

RESPONSE: Plaintiff's narrative is not material to her claims or to Defendants' summary judgment motion.

153.    Plaintiff was not allowed to reapply for promotion to Full Professor in the following promotion cycle, despite having never been told of any rule and/or policy that prohibited her reapplication. [Filing No. 36-A at ¶¶ 10-11 (*Declaration of Bowei Xi*)].

RESPONSE: Plaintiff's Declaration [Filing No. 36-A at ¶¶ 10-11 (*Declaration of Bowei Xi*)] does not say she was not allowed to apply for promotion. Plaintiff cites the following: "On April 5, 2023, I met with Interim Department Head Dr. Daniel Cziczo. I recorded that meeting as well. During our conversation, Dr. Cziczo told me that the handling of my promotion case was 'a mistake beyond your control' and stated, 'If I were you, I would give up.' He also said that he had spoken with the College and advised me not to reapply that year. Before that meeting, I had not been told of any rule or policy that would prevent me from reapplying. I understood from prior practice in my department that faculty could reapply in the next cycle if they wished to do so.'" In addition, Plaintiff's narrative is not supported by admissible evidence (including personal knowledge) as required by Fed. R. Civ. P. 56. Plaintiff's argument and conjecture should be ignored.

Dated: July 2, 2025

Respectfully submitted,

*/s/ Emily C. Lodge*
John R. Maley (#14300-89)
Colleen Schade  (#36229-41)
Emily C. Lodge (#38254-71)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana  46204
Telephone:      317.236.1313
Facsimile:      317.231.7433
E-mail:          jmaley@btlaw.com
                     colleen.schade@btlaw.com
                     emily.lodge@btlaw.com

*Attorneys for Defendant*,
*The Trustees Of Purdue University*